Daniels, J.
The plaintiff is a national banting association, created under the laws of the United States, located and carrying on its business in the state of Massachusetts. The defendant commenced an action against it in the superior court of the city of New York, and obtained an attachment in that action, which was served upon the First National Bank in the city of New York. This bank was the depositary and correspondent of the plaintiff, and, by the attachment, $12,000 of the deposits was seized and held by the sheriff. The money was not paid over by the First National Bank, but it was charged against the plaintiff’s account as so much money subjected to the attachment The plaintiff appeared in that action and answered the complaint, which was for the loss of bonds deposited with it for safe keeping by the plaintiff in the action in which the attachment was issued. The bank appears to have been robbed, and these bonds taken by the thieves, and they thereby have become lost to the owner. The bank, by its answer, put in issue the charge upon which its liability was made to depend, and defended the action without moving to vacate the attachment. Such a motion, however, would then probably have proved ineffectual, for the reason that it was held by the courts of this state that the property, within this state, of a national bank created and located in another state, might be seized under an attachment issued against it as a non-resident, by virtue of the laws of this state. Robinson v. National Bank of New Berne, 19 Hun, 477; affirmed, 81 N. Y., 387. And that continued to be the exposition of the law in this state, until after the trial of the action brought against the plaintiff. Since then, however, full effect has been given to the language of the act of congress, in the case of the Pacific National Bank v. Mixter, 124 U. S., 721, which has so restrained the state attachment laws as to exclude the right to issue an attachment, under them, against a national bank located and doing business in any state.
After the suit had been commenced against the plaintiff in this manner, it was removed into the circuit court of the United States at its instance, and upon a trial in that court a verdict and judgment was recovered in favor of the bank, and that was affirmed npon a writ of error taken to the supreme court of the United *288 States. And it was after that affirmancethat this action was brought by the Northampton Bank against the sureties in the undertaking given upon the issuing of the attachment, to recover the damages which the bank had sustained by reason of the attachment. The undertaking was in the form prescribed by § 640 of the Code of Civil Procedure, and the costs recovered by the bank by means of the judgment have been paid. The undertaking conformed literally to this section of the Code, and the sureties undertook and obligated themselves, in case the defendant in the attachment recovered judgment, or if the warrant was vacated, that the plaintiff in that action would pay all costs which might be awarded to the defendant therein, and all damages sustained by reason of the attachment, not exceeding the sum specified in the undertaking, This section of the Code very plainly includes two subjects, clearly distinguishable from each other; one is the obligation to pay the costs awarded to the defendant, the other to pay the damages which may be sustained by reason of the attachment Upon the trial it was proved that the plaintiff, as defendant in that suit, had incurred and paid out considerable sums of money by way of expenses, in obtaining the attendance and evidence of witnesses in its behalf, and for counsel fees for the services of counsel rendered in the course of the litigation. The legal fees, however, of the witnesses, as well as of the deposition taken in the state of Massachusetts, were included in the costs and paid as a part of the sum recovered by the judgment
Upon this part of the case, accordingly, the inquiry is limited to the right of the bank to recover against the sureties in the undertaking for any part of the moneys incurred and paid for counsel fees and these other expenses in the course of the litigation. The case of Northrup v. Garrett, 17 Hun, 497, had been cited and was followed at the circuit as an authority authorizing such a recovery against sureties in the undertaking. But that case was not so far extended as to sanction and support such a recovery. The attachment there had been issued in the court of. a justice of the peace, and the obligation arising upon the bond was very much the same as that entered into by sureties in this undertalcing. But all that was there recovered was the costs which had accrued in the action before the justice, and upon the prosecution of a writ of certiorañ brought to review it in the county court, they were held to be a proper charge against the surety in the bond; and, so far, the case has followed the preceding authority of Ball v. Gardner, 21 Wend., 270, where it was held that all the costs included in the judgment might be recovered against the surety in the attachment bond.
But this term costs, as it was used in the preceding statute, and has been employed in this section of the Code, has never been attended with that degree of significance as to allow it to include counsel fees incurred and expended in the litigation. It includes the numerous items designated in the statute as costs, together with the fees of officers and witnesses, which may be recovered, under its settled and well-defined provisions as a part of the judgment m favor of the successful party. Counsel fees are separate- *289 and distinguishable' items from those entering into the signification of the word costs, as it has been employed in those and other statutes. As part of the costs of the action these counsel fees form no charge whatever against the sureties in the undertaking. Neither is the bank entitled to recover them as damages sustained because of the attachment, for the reason that the counsel fees were in no degree incurred in any proceedings taken for the purpose of vacating or setting aside the attachment. As the law stood at the time, no such proceeding could be successfully prosecuted, and the bank, probably understanding that to be its position, acquiesced in the regularity of the attachment, made no effort or motion whatever to vacate or set it aside. But its resistance was wholly directed to defeat the action itself by establishing the result that the plaintiff in the suit had no legal claim against the bank arising out of the abstraction and loss of the bonds. The services of counsel rendered and bestowed in the-litigation were for this end entirely; they were to support and maintain the position taken by the answer that the plaintiff, under the law, was exonerated from[1] liability for the loss of the bonds. It is true that this resulted in vacating the attachment, but not from any effort or attempt to set it aside, but because the action itself failed by establishing the truth of the answer and exonerating the bank from legal liability. Under this state of the case, which is fully sustained by the proof as well as by the findings of facts, it can in no legal sense be affirmed that any part of these counsel fees, or other expenses, were incurred by the way of damages occasioned by the issuing and service of the attachment, and, so far as they have been included in the judgment recovered' by the defendant, it is erroneous, and should be reversed and set aside.
It appeared by the evidence that the bank kept on deposit with the First National Bank of New York a much larger amount than was subjected to the attachment, and that upon its deposits with the First National Bank it was entitled to interest at the rate of two and a half per cent when they exceeded the sum of §5,000. They did exceed that amount during the pendency of that action, and interest to that extent was allowed upon the deposits to the-Northampton Bank while the $12,000 were held subject to the attachment. But it appeared by the evidence, as the fact might also be inferred from the statute of the state, that the moneys were capable of being used in discounting first-class paper, securing a return in the way of interest at the rate of six per cent. That was the rate both in Massachusetts and in this state for prime commercial paper during the year 1882. It is to be inferred from this evidence that if the bank had not been restrained from tising this $12,000 by the attachment, that it might have secured this rate of interest tor the use of its money. It would not have been obliged to have left it on deposit with the First National Bank, but might have withdrawn it and used it in the course of its own business, if it had not been for the restraint of the attachment. That it was prevented in this manner from doing, and *290 there is reason to believe, therefore, that it lost interest at the rate of three and a half per cent on this sum of $12,000 for the time it was kept in the First ¡National Bank in subjection to the attachment. For that, under these circumstances, it was considered by the court, at the trial, that the bank was entitled to recover as interest in this action upon this sum; and the decision, to that extent, conformed to the obligation with which the sureties charged themselves under this section of the Code of Civil Procedure, as well as the authorities before that, and the cases since then decided in this court. Dunning v. Humphrey, 24 Wend., 31; Groat v. Gillespie, 25 id., 383. To that extent the bank did sustain damages by the reason of the attachment. It tied up the fund and disabled the bank from using it, as it otherwise might have done, and from earning by its use this legal rate of interest. But, as already observed, as no part of the counsel fees and other expenses were incurred or expended otherwise than in defense of the action and to support the position taken by the answer in exoneration of the bank from liability, the bank Was not entitled to any allowance by reason óf such expenditures, or because of a larger than the legal rate of expenditures in obtaining its evidence in the state of Massachusetts, or securing the attendance of witnesses from that state upon the trial. The amounts so- incurred and paid were neither costs in the action nor damages sustained because of the attachment; and as the costs themselves were fully paid, the extent of the liability of the sureties in the attachment is for this rate of interest down to the time when it was discharged, on the 1st of February, 1883. The judg•ment should, accordingly, be. reversed and a new trial ordered, with costs to the appellant to abide the event, unless within twenty days after notice of this decision the bank shall stipulate to reduce the recovery to the sum of $425.07 and interest thereon from February 1, 1883. An in case the stipulation shall be given, then the judgment will be modified by reducing the recovery to that sum, and the allowance to five per cent upon the amount, without costs of the appeal to either party.
Van Brunt, P. J., and Brady, J., concur.